

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

Honorable H. Pat Edwards
Civil District Attorney
Dallas County
Records Building
Dallas, Texas

Affirmed by ~~Supreme Court~~
212 S W(2) 625

Dear Mr. Edwards:

Attention: Mr. Warren S. Cook,
Assistant District Attorney

Opinion No. 0-7234

Re: Whether or not a person over
sixty years of age, living
in a city of 10,000 population
is entitled to vote when he
has not renewed his exemption
certificate, as required by
H. B. No. 344, 49th Legislature.

We beg to acknowledge receipt of your letter propound-
ing the following for a legal opinion from this department:

"I have this proposition. Kindly render an
opinion or secure same from the Attorney General.

"Our constitution provided that all persons
over 60 years of age are exempt from the payment
of poll tax. Since that time the Legislature has
provided for the Tax Collector to issue to those
persons so exempt, a permanent voting certificate.

"Now during the last session of our Legislature,
a law was passed requiring that exemptions in cities
of over 10,000 be renewed between October 1st and
January 31st each year.

"My attention has been called to the fact that
quite a number of these permanent exemption holders
failed to renew their voting certificates, because
of illness or being out of the city, or other reasons.

"Can these people vote under the constitutional
right, or will they be denied on the legislative act,
as set forth above?

"Kindly give me this opinion at the earliest
possible date so that I may correctly answer those
who seek this information."

The above is itself your quotation from the inquiry
of Mr. Ed Cobb, Assessor and Collector of Taxes for Dallas County.

We thank you for your brief of discussion and citation
of authorities accompanying your request. On account of the im-
minent Importance of your inquiry, we have given it a most care-
ful examination.

It is the opinion of this department that a person who
has heretofore received a permanent exemption certificate because
of age may not be denied the right to vote at any election held
in this State merely because he has failed for any reason to re-
new his certificate under the requirement of H. B. No. 344 passed
at the regular session of the 49th Legislature. The reasons which
lead us to this conclusion are as follows:

The question is of first impression in this State, we be-
lieve, and our conclusion is reached upon an original investiga-
tion of the pertinent constitutional and statutory provisions. We
start out with the indisputable proposition that the right of suf-
frage, although it be a matter of constitutional and statutory
grace, in the sense that it is subject to the regulations of law,
is nevertheless one of the most fundamental rights of a citizen of
this State. Indeed, it is an essential right of a citizen in any
democratic form of government. The right to vote, therefore, will
not be denied to any citizen unless such right is forbidden
in clear and unmistakable terms of law.

In Section 2 of Article XVI of the Constitution, it is
declared:

"The privilege of free suffrage shall be protected
by laws regulating elections and prohibiting under ade-
quate penalties all undue influence therein from power,
bribery, tumult, or other improper practice."

Section 1, of Article VI of the Constitution, dealing
with suffrage, names the classes of persons who shall not be
allowed to vote. By no stretch of the imagination could it be
held to include the class of persons under consideration.

Section 4 of Article VI of the Constitution is as fol-
lows:

"In all elections by the people the vote shall
be by ballot and the Legislature shall provide for
the numbering of tickets and make such other regula-
tions as may be necessary to detect and punish fraud,
and preserve the purity of the ballot box, and the
Legislature may provide by law for the registration
of all voters in all cities containing a population
of 10,000 inhabitants or more."

This Section clearly clothes the Legislature with power
to provide registration laws for voters, and further to make such
other regulations "as may be necessary to detect and punish fraud
and preserve the purity of the ballot box." No one would deny the
power of the Legislature to do these things; but it has never un-
dertaken to pass general registration laws, and H. B. No. 344 does
not purport to be, nor is it a law for detecting or punishing
fraud, or preserving the purity of the ballot box pursuant to the
provisions of Section 4. On the contrary, the bill itself shows
affirmatively that its purpose and effect was entirely other than
the constitutional purposes.

The emergency clause of H. B. No. 344 fairly and cor-
rectly states the motivating purpose of the Act, as follows:

"The fact that there are at this time the names
of many people who are deceased, or who have removed
from the State of Texas upon the poll tax exemption
list of all the counties throughout the State, places
a heavy burden upon the Tax Assessors and Collectors
of each of the several counties of Texas, creates an
emergency and an imperative public necessity that the
constitutional rule requiring bills to be read on three
several days in each house be suspended", et cetera.

The bill therefore purportedly and actually was for the
relief of the county officers named, and not in any sense to de-
tect or prevent fraud, or to preserve the purity of the ballot
box. These wholesome objectives could not possibly be threatened
by the appearance of an aged voter holding a permanent old-age
exemption certificate, but not further holding an annual renewal
exemption thereof.

Again, H. B. No. 344 is undoubtedly in form mandatory
upon the holders of old-age exemption certificates to have the
same renewed annually, but it is significant that such bill no-
where provides any character of penalty for a violation of that

duty, and especially does it not impose upon such person the severe penalty of disfranchisement.

Forfeitures and penalties are not favored in law. They are avoided if possible. Moreover, in construing a legislative act, we are not permitted to go beyond the four corners of the instrument or bill itself. We must find the intention of the Legislature, and therefore the law, within that instrument. Specifically, we are not permitted to read into this act a forfeiture or penalty that is not contained therein, either by express language or necessary implication. Of course, no such forfeiture or penalty is expressly contained in the bill, and neither is one to be read into it upon any conception of implication, for clearly such an implication of forfeiture is not necessary, for the act as above shown clearly supplies all that is necessary to support the act as a valid act -- that is, the relief of the county officer named in the emergency clause.

H. B. No. 344 is an amendment of Article 2968 of the statutes providing for a permanent certificate of exemptions. Article 2968a (Vernon's codification of the statutes) deals with exemption certificates to persons who do not reside in a city of 10,000 inhabitants or more, and specifically provides "and no such person who has failed or refused to obtain such certificate of exemption from the payment of a poll tax shall be allowed to vote."

It is significant, therefore, that H. B. No. 344 contains no such provision. We are not free to imply such a penalty, which the Legislature, presumably, intentionally omitted.

There is nothing in Article 3004 of the Revised Civil Statutes contrary to our conclusion. That Article was enacted in 1905, re-enacted in the codification of 1925, and had the same meaning at those times as it has at this time -- no more and no less. It has acquired no new meaning from the enactment of H. B. No. 344. It is yet in full force according to its true meaning, and every requirement of it can be met fully by any person to whom there has been issued a permanent old-age exemption certificate, without the renewal thereof at any time.

The case of Texas Power & Light Co. v. Brownwood Public Service Co., 111 S. W. (2) 1225, has been urged upon us as being contrary to the views herein expressed. The case is not susceptible of any such construction. That case construed Section 4 of Article VI of the Constitution heretofore quoted by us, and moreover is in perfect harmony with our views. As we have heretofore shown, the Legislature in the enactment of H. B. No. 344 did not attempt to exercise those powers, and did not in any

event directly nor indirectly, expressly nor by necessary implication, impose the drastic penalty of disfranchisement for a failure to observe the requirement for annual renewals of an existing permanent exemption.

The principle that a mandatory statute, with no penalty attached, is in reality only a directory statute is not new in our jurisprudence. For a hundred years there has been a mandatory constitutional provision requiring re-apportionment of districts in the State, which mandatory requirement has been more frequently violated than observed. Again, some years ago, it will be recalled, there was a statutory provision that where husband and wife were divorced upon grounds of cruelty, neither should marry within a year thereafter. Such a statute was mandatory in form, but it did not further visit the penalty of invalidity upon a marriage contracted in violation thereof by either party, and did not therefore in legal effect forbid the consummation of such a re-marriage.

Finally, it will be seen Article 2968 as amended by H. B. No. 344, requires all first-exemption certificates to be obtained before the first day of February of the year when such voter shall have become entitled to such exemption, but it does not fix any time when such certificate shall be renewed or reissued. So that, at the very utmost it could be obtained at any time before the holder offered to vote.

If it should be that we are wrong in all we have said as to the construction of H. B. No. 344, nevertheless we are of the opinion the Act is void in toto, in that it violates Section 35 of Article III of the Constitution with respect to the title of bills. The title is affirmatively misleading. The subject named in the title clearly embraces all persons holding poll tax exemption certificates, whereas the bill as passed pertains only to a certain class of such persons, that is to say, persons living within a city of 10,000 or more population. One interested in the subject-matter, upon reading the title of the bill, might favor an all-embracing amendment, and yet oppose one applying only to a part of the exempted persons. Moreover, the title is absolutely false; it is belied by the bill as passed.

Landrum v. Centennial Rural High School District No. 2, 134 S. W. (2) 353, by the Court of Civil Appeals for the Third District, declares:

"No rule is ,tter established than the one that where a title or caption of an act specifies the particular field of the amendment, and that it is to cover or state a particular purpose to make a change in a prior statute the amendment is limited to the making

of the specific changes designated in its title, and precludes any additional, contrary, or different amendment than that stated in the title. Rutledge v. Atkinson, 101 S. W. (2) 376; Walker v. State, 116 S. W. (2) 1076; Sutherland v. Board of Trustees, 261 S. W. 489."

We think this well-settled rule applies to the case before us. See:

City of Fort Worth v. Harris, 177 S. W. (2) 308, 180 S. W. 131;

Abernathy County Line School District v. New Deal County Line District, 175 S. W. (2) 446;

Kinchelo v. State, 175 S. W. (2) 593;

Walker v. State, 116 S. W. (2) 1076;

Lowery v. Red Cab Company, 262 S. W. 47;

De Silvia v. State, 229 S. W. 542;

M. K. & T. Ry. Co. v. State, 113 S. W. 916;

Gulf Production Company v. Garrett, 24 S. W. (2) 389.

Praetorians v. State, 184 S. W. (2) 299, by Judge Baugh of the Court of Civil Appeals for the Third District, declares:

". . . A somewhat stricter rule of conformity of the title to the subject-matter legislated upon in the body of the act is applied to amendments than to titles of original act. See: Doeppenschmidt v. International & C. N. R. Co., 101 S. W. 1080; and Rutledge v. Atkinson, 101 S. W. (2) 376. . . ."

Gulf Insurance Co. v. James, State Treasurer, 185 S. W. (2) 966, declares:

". . . The rule of liberal construction will not be followed to the extent that it will relieve the Legislature of the necessity of disclosing the real subject of the Act in the title thereof, nor will it be extended so as to hold acts valid, the titles of which are deceptive or misleading as to the real contents of the Acts."

There are other serious constitutional questions which might be raised, but in view of our disposition of the matter, it becomes unnecessary to discuss the same.

We trust that what we have said sufficiently answers your inquiry.

Very truly yours

ATTORNEY GENERAL OF TEXAS

/s/ Wm. J. Fanning

By

Wm. J. Fanning
Assistant

/s/ Ocie Speer

OS-MR:fb

By

Ocie Speer
Assistant

APPROVED JUL. 16, 1946

/s/ Carlos C. Ashley

FIRST ASSISTANT ATTORNEY GENERAL

This opinion considered and approved in limited conference.